The next case today is Carlos Montero Silva v. Merrick B. Garland, Appeal No. 201593. Attorney Winger, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. Emma Winger on behalf of the Meeki and in support of Petitioner. Petitioner and I have divided arguments such that I will be arguing for seven minutes and Ms. Doyle will be arguing for three.  Yes. Thank you. I will be addressing the meaning of the aggravated felony and offense relating to obstruction of justice and whether or not it categorically matches the Massachusetts offense at issue here. Ms. Doyle will be addressing the remaining issues in this case, including whether the Chevron framework is applicable to this analysis. The government asks this court to create a circuit split and be the first to defer to the board's definition in Valenzuela-Gallardo. The court should reject that invitation. Regardless of whether or not the Chevron framework applies here, this court should reject the board's definition because the statutory term of art, obstruction of justice, unambiguously requires an access to a pending proceeding or investigation. The Supreme Court's decision in Esquivel-Quintana provides the relevant framework here. There as here, the aggravated felony was not expressly defined by statute or by cross-reference. Nevertheless, there as here, the traditional tools of statutory construction converged on a single answer, rendering the term unambiguous, at least with respect to one aspect of the generic offense. We can begin, as the Ninth Circuit did, with the dictionary definitions in 1996 to understand the meaning of obstruction of justice. Black's law dictionary expressly requires impeding those who seek justice in court or otherwise interference with the execution of lawful process. Likewise, Merriam-Webster's references obstructing a list of players in proceedings or investigations and includes otherwise impeding an investigation or legal process. Next, we can turn, as the court did in Esquivel-Quintana, to the surrounding provisions. As the Ninth Circuit and the board in Espinoza-Gonzalez observed, both perjury and bribery of a witness are clearly tied to ongoing proceedings and investigations and support a nexus requirement here. In addition, just a year before Congress enacted the obstruction of justice aggravated felony, in Aguilar, the Supreme Court reaffirmed that the phrase, corruptly influence, obstruct, impede, the due administration of justice, which is, of course, the general or catch-all obstruction of justice offense, requires a nexus to a pending proceeding. In doing so, the court reiterated at the 1893 holding in Pettibone that obstruction can only arise when justice is being administered. As the Ninth Circuit observed, this omnibus clause is an important guidepost when interpreting the generic definition of obstruction of justice. We can also look to the closely related federal criminal statute. Here, obstruction of justice has its own chapter in the U.S. Code, Chapter 73, which therefore provides the appropriate statutory context here. As the Ninth Circuit observed, with one exception, all the provisions in Chapter 73 that existed in 1996 required an ongoing proceeding or investigation. Contrary to the government's arguments, the accessory after the fact, federal accessory after the fact, is not a part of the relevant statutory context here for several reasons, including the fact that Congress affirmatively chose not to include it in Chapter 70, within the obstruction of justice chapter, and that perjury and bribery likewise reference chapters within the U.S. Code. Finally, in response to the government's suggestion that the phrase relates to somehow... No, they have their own chapters. So the surrounding provisions each correspond to a chapter in the U.S. Code. There's a perjury chapter, and there's a bribery chapter, and there's an obstruction of justice chapter. I'm sorry, doesn't it follow from that that obstruction of justice means something other than, and most likely more than, perjury and bribery? Yes, apologies, I didn't... Well, you referred earlier to Supreme Court case law. All right, so what is it about the federal statute that you say is a mismatch with the state crime here? Because the obstruction of justice requires a nexus to a pending proceeding or investigation, the Massachusetts statute here does not require any pending proceeding or investigation. The Supreme Judicial Court has affirmed convictions for the principal leaving the scene of a crime before any investigation has occurred. It has affirmed an accessory after the fact conviction for soliciting an award for stolen silver from the owner of a gallery with no mention or reference to any ongoing proceeding or investigation. An ongoing proceeding or investigation is simply not an element of the Massachusetts offense, and because it is an essential element of the generic offense here, there cannot be a categorical match. Here's just the confusion. I'm trying to track your argument about how this fits in the way the federal code is laid out. The perjury is not under its... there's no chapter heading called perjury, correct? There is a chapter heading called perjury. And then under that chapter heading, are there separate offenses of perjury? Correct, yes. Okay, and then with respect to obstruction of justice, 1503 is one. Yes. And then there's other types of offenses under the obstruction of justice heading? Correct, yes. So it's your position that the obstruction of justice heading here encompasses all of the offenses listed under that chapter heading or only 1503? No, my position here is that because the obstruction of justice chapter, all of the offenses within that chapter... I know that. I'm asking a different question. Sure. Is your position that the phrase obstructive justice in this statute encompasses all the offenses listed in the obstruction of justice chapter in the federal code? No, because one of those chapters carves out a specific exception and does not require an ongoing proceeding. And our position is that that illustrates the point here, that Congress knew that as a general matter, the generic form of obstruction of justice requires a pending proceeding or investigation. I'm just, for interpretive purposes, I'm not following something. Yeah. It's a chapter heading called perjury. On your reading, one way to read this statute is it's listing chapter headings, right? Sure. And one natural thought would be, oh, well, then that means it's picking up all the offenses under that chapter heading. That doesn't seem to be your position. So it's chapter headings, and then in referring to those chapter headings, it's actually got some idea of an offense that corresponds to that chapter heading? Is that the idea? Your Honor, because there's not an explicit statutory cross-reference, we're not arguing that Congress simply took everything in Chapter 73 and made that the generic offense here. My puzzlement is once you abandon that, and I understand why you do, and Esquivel sort of suggests you have to because there's no cross-reference. Once you do that, then we're a little bit at sea. We've got a general term, obstruction of justice. It's true there's a whole bunch of offenses listed in the chapter that all tie to a proceeding, but then there's the model penal code reference to obstruction of justice, and that's got a hindering offense. And the hindering offense isn't tied to a proceeding. So as between the two, why is it evident that your reading is the right one rather than the government's reading, which seems to rest on the model penal code's hindering offense? Well, the model penal code never uses or defines the phrase obstruction of justice  and doesn't add ambiguity in the face of the congressionally-approved Chapter 73 of the U.S. Code. And we don't just point to Chapter 73. There's also the Supreme Court's repeated definition of what is considered sort of the generic federal obstruction of justice offense, and there it's very clear that a pending proceeding is required, which provides further support separate and apart from Chapter 73 that Congress is aware of. That's 1503, which you're saying is not the thing we're supposed to look to here. That's what I'm a little confused by. You're saying there's something broader than 1503, but then it turns out it's actually 1503, even though there's no cross-reference. We're arguing that it provides another piece of evidence to support the argument that the Congress understood the term obstruction of justice in 1996 to require this nexus to a pending proceeding or investigation. So it's the dictionary. It's the judicial construction of a similar term. It's Chapter 73. It's the surrounding provisions, which also require a nexus to a pending proceeding or investigation. This is a legal term of art that was specifically understood to require either a proceeding or investigation. Ms. Swinger, help me here. As I understand the purpose of the argument you're making, there is no possible ambiguity in the federal crime of obstruction of justice, even though you say it encompasses both decisions and statutes, and you read the statute in one way and the government reads it another. You are saying that in part because you are addressing the question of do we have to defer to the agency's interpretation of it. I understand your colleague will argue that even if at stage one the statute has some ambiguity, we shouldn't follow the agency's interpretation. But am I missing something? Is that the main object of this argument? Yes. Because obstruction of justice, as it's used in the aggravated felony context, unambiguously requires a pending proceeding or investigation, at step one there is no need to defer to the agency's incorrect interpretation. Assume we disagree with you. Then we're into Chenery and a bunch of other cases. This court has said in several cases, when it comes to the definition of aggravated felony, we are going to give deference to the BIA in its definitions. Here they've issued an opinion. I understand your colleague is going to say that that's wrong. But doesn't that require us to overrule our long line of cases saying we give some deference? In that sense, aren't we in a different position than the Ninth Circuit? I don't think it works to say, oh, but this is a different question of what is an aggravated felony. Maybe it works at stage one, but let's assume you've lost at stage one. Are there any other arguments as to why we should not give deference to the agency other than the ones your colleagues are going to be addressing? Are there arguments you want to present to us? Ms. Doyle is prepared to argue the primary argument, which is this is a dual application statute that applies both to immigration and carries severe criminal consequences. I will let her make that argument. I would just point out that the published decision here was vacated by the Ninth Circuit. So we're now left with a decision that was vacated. Thank you. Sometimes we agree with the Ninth Circuit. Sometimes we don't. We'll see. I just have one last question, which is your colleague, I know, is going to focus on this, but since I do want an answer to it, I'll take two shots rather than one. In our prior, as I understand our precedent, is it the Leckie case that's the first one that invoked Chevron? In the aggravated felony context? I believe so, Your Honor, yes. Do you know if in that case an argument was made that Chevron should not be applied? There is nothing from my reading of the decision to suggest that that argument was raised, no. I am past my time. Yes, thank you, Ms. Winger, and you have reserved a minute. So if you would mute your devices, we will hear from Ms. Doyle. May it please the court, Carrie Doyle for the appellant petitioner, Carlos Silva, and I will just jump in to dovetail off what Ms. Winger was arguing, which I think is that there's a step zero of Chevron that we would like to put directly in front of this court, and that argument is that in prior cases, Leckie, Soto-Hernandez, and DeLima did not, in fact, address this very specific issue that we would like the court to squarely look at, which is whether a dual application statute, in this case the court interpreting a criminal statute, that you should defer to an agency. The Supreme Court has consistently refused to defer to the board in determining the interpretation of a criminal statute. It is at the heart of our separation of powers format in our nation, and for your court to keep that authority, to look at a criminal statute, to determine what the criminal statute means. What's the criminal statute that's being interpreted here? The criminal statute here is an obstruction of justice criminal statute in the Massachusetts criminal accessory act. They were construing the phrase aggravated felony, in particular the portion of it that refers to obstruction of justice in this immigration statute. Is that itself a criminal statute? I guess I'm just not following. Right. So the aggravated felony immigration statute encompasses the criminal statute, and your honors are... No, it doesn't. It's encompassing, under Escobar, a generic offense. A generic criminal offense. Yeah, but it's not a criminal statute. You're not criminally liable for violating the generic offense. You don't get prosecuted. There's no federal crime of the generic offense of obstruction of justice. It's a key to triggering an immigration consequence. Right, but the statute still references criminality and responsibility under criminal statute. That's a very different thing than saying that it's being applied to construe a criminal statute. The consequence of deferring here does not affect the scope of any crime, because your argument is not that we'd be construing 1503. We'd be construing a phrase that has no criminal consequence, which is obstruction of justice. There may be an argument that under Chevron we shouldn't defer to the question of how to define a generic offense, and Escobar, as I read it, provides fairly strong support for that, but that's a very different argument than not deferring to a dual-use statute, because it's criminal. Well, in this situation, I think that you are interpreting criminal consequences, certainly, of the generic obstruction of justice. No, you're not. It's not a criminal consequence. Ms. Doyle, you're flogging a horse that maybe you ought to be concentrating on the other horses in your argument. Do you want to move on?  As Judge Barron pointed out, however, the Esquivel-Quitana Supreme Court case and its other related cases, including Carachiri-Ricendo, U.S. v. Appell, the Supreme Court did discuss the fact that the courts retain its authority to interpret the criminal definitions of immigration dual-use statutes, and we would encourage this court to retain its authority in doing so. I would also point out that since your decisions in 2013, where the issue of the court's role in interpreting criminal general-use statutes or even a specific criminal statute has shifted, the Supreme Court has... Ms. Doyle, please. The assumption is we are not being called on to interpret a criminal statute, but an immigration statute. So, reframe your argument. Okay. Thank you, Your Honor. What I wanted to move on to was the fact that the initial finding in Chevron that deference must be automatically granted to the Board of Immigration Appeals has...the foundation has shifted, both with the Kaiser decision, Justice Gorsuch's, and refusing to accept Sertruri in the Getty's decision. I'll agree with you on that, but be that as it may, we do have the First Circuit cases out there saying, as to this question of what's an aggravated felony, we apply Chevron. So, either you have a Supreme Court case that would lead us to overrule those cases, or you distinguish those cases on some basis. Well, I would distinguish the cases in several instances, and also, as I said, point out that the interpretation of Chevron has shifted since 2013 until today, and that there shouldn't be such an automatic deferral to the agency, particularly in light of the fact that the Board of Immigration Appeals is a very unique executive agency that is very different than what was contemplated by the EPA on Chevron. This is not an agency that provides rulemaking and public comments in making its decision. This particular decision was a one-Board member decision that has been explicitly overruled twice by the Ninth Circuit. The Third Circuit has also found that the Board of Immigration Appeals definition cannot be followed. I would point out also that the rule of lenity should come into play in deciding whether or not this Board of Immigration Appeals decision could be deferred to by the court. Finally, I would like to just remind the court that we're also looking at a particularly serious crime issue in this case, that the Board of Immigration Appeals erred, legally erred, in upholding the immigration judge's decision in denying Mr. Salva his application for, in finding that he had committed a particularly serious crime. They relied on facts that were not in evidence and determining that the nature of the conviction and the circumstances and the facts of the case were such that he had, in fact, committed a particularly serious crime. I would urge the court on the particularly serious crime issue to remand it for further fact-finding and legal analysis because, as determined, the facts and the legal analysis are improper and cannot be upheld. Additional questions from the court? Thank you, Ms. Doyle. If you would mute your devices. Mr. Schultz. May it please the court. First of all, can you all please see and hear me? Yes. Thank you, Your Honor. May it please the court, my name is Evan Schultz, representing the government. Your Honors, I think you've actually addressed many of the points that I was planning on making, but I would like to pick up a few of the strands that came up to see if I can maybe give a little bit more context. First of all, I think that Judge Lynch was absolutely correct in talking about the importance of the Chevron framework here. I think everything follows from that. So I think it is important to keep in mind that the deference that Chevron calls for, and that this court then also talked about in the Sengaran decision, are crucial here. So turning to that, the first question is what folks call Chevron step zero. And as Your Honors have mentioned, that's an issue that's been decided in this court. When it comes to the aggravated... Okay, go ahead. Thank you, Your Honor. When it comes to the aggravated felony provisions in 8 U.S.C. section 1101A43, that issue is decided. It's come up in the Sotomayor Hernandez case, in Luckey, and most recently in Dilema. And as Your Honor said, that would have to be something that would be overturned. Was it challenged? Was the question of Chevron application at issue in any of those cases? Well, clearly Chevron was discussed, or at least through the Sengaran case. I know that. That itself refers to Chevron. Was the question of whether it applied, not the question of whether step one meant we don't defer, but was the question of whether Chevron applied at all at issue in any of those cases? I haven't seen the briefs, Your Honor. From the case discussions, from the decisions, it seems to be something that's embedded, that seems to be taken as a foundational point. If no one ever towns it, and now there's all this reason to now think it's a real issue, it seems a little strange to think that in the face of that we would be bound. Your Honor, the application of Chevron doesn't seem to be something that was ever doubted by anyone. The fact that it might not have been challenged could also speak to the opposite about how firmly understood it was to apply. Once Chevron steps zero… Do you think it's firmly understood at this moment that it applied? I think that there's three cases, at least in the circuit court, that have taken it as a presumption that it applied. That would be something for this court to reckon with. Well, there's sort of two related arguments. One is whether it was questioned. I guess the government could go back and find the briefs if they're available electronically and advise us later, but Chevron law has changed. Then there is the question of, well, would it still apply? So why don't you tell us why you think it continues to apply and address Judge Barron's question about, is it Esquivel, the Supreme Court case? So to take your first question first, I think that it really goes back to what you just said when you were talking to amicus counsel and opposing counsel. This is a question that involves interpretation of immigration law under Chevron. That is a question that falls firmly within agency discretion. This isn't something that has criminal application, at least not directly. And as a result, this is precisely the sort of area that Chevron and Sagron have always said is something that falls within the agency's discretion. It's really just a straightforward Chevron analysis. I would also point to the Supreme Court's decision, Agari-Agari, where they said that board-published decisions do receive Chevron deference. Let me just push on that a little bit to get the boundaries of what you're claiming in that regard. One idea of Chevron would be just there's linguistic ambiguity about the words obstruction of justice, and in consequence of that, any reasonable formulation of those words that the agency came up with we could defer to. I take it that position would run into some tension with Esquivel, which seems to say that there's a framework that has to be used in this context for giving meaning to those words because the framework is that that set of words is a referent to a generic offense. I'm sorry, Your Honor. I thought you were done. I apologize. Esquivel then gives a set of methods for defining what a generic offense is. Are you suggesting that the agency would be free to use different methods, or is it required to use the methods set forth in Esquivel? With all due respect, Your Honor, I think you're reading too much into Esquivel. It actually discusses ambiguity in Chevron Step 1 towards the end of the decision, and it's quite specific that it does not seem to be setting forth something that applies to all statutes, to all of the aggravated felony provisions. What it says, and I'll quote here, is we have no need to resolve whether the rule of lenity or Chevron receives priority in this case because the statute read in context unambiguously forecloses the board's interpretation. The use of that word unambiguous means that—I'm sorry, Your Honor. I just want you to distinguish between two different inquiries. The first inquiry is, is this statute unambiguously referring to a generic offense, and is it clear the tools we use to define a generic offense? That's inquiry one. The second inquiry is, using those tools to define a generic offense, is it clear what the outcome would be? I don't disagree with you that that second question isn't resolved by Esquivel, but I have a hard time seeing how Esquivel doesn't give a pretty strong signal, at least, that it's saying it's quite clear this is a reference to a generic offense and that when it is, you're supposed to use these specific tools for defining it. Again, Your Honor, I think that does feed too much into Esquivel. As far as the way you framed this initially, where you said, is this simply a linguistic question of whether the phrase obstruction of justice lacks clarity? I think that's precisely how to frame this, Your Honor. I think that Esquivel was— I understand that argument and why you went under it. Suppose I didn't agree with you on that, and you thought with me that there was a pretty good case for saying, after Esquivel, it is not up to an agency to choose to read this word as not referring to a generic offense, and that because it has to be read to be referring to a generic offense, we're supposed to use the tools laid out in Esquivel for finding it. I agree with you that the tools are important. How would you then say we're supposed to proceed? Just to make sure I understand, you're then saying that this is no longer under Chevron at all, and if so, how does the score proceed? Is that the hypothetical? No, I'm saying that if Chevron applies, it might apply to the ambiguity that arises in this case from using the usual tools we have to use to figure out a generic offense. I think I do agree with that, Your Honor. If you walk through the tools and just make the case for me, why, given it's referring to a generic offense, and given what Esquivel says, the right way to think about it is that there's an ambiguity using those tools. Yes, Your Honor. What is the nature of the ambiguity? That's precisely what we did do in our brief. For starters, it is there, and I'm happy to walk you through it. The first thing is whether or not there's a definition in the statute, and the answer here is no, it's not. That was also true in Esquivel, of course. Next question is whether or not there's a cross-reference. Here there is no cross-reference, so that also introduces ambiguity. One of the issues that comes up in Esquivel is looking at the provisions that surround the provision here at issue. So this one is obstruction of justice. The ones there are perjury and bribery. To be fair, there is the language that was – I'm sorry, there is a discussion that came up before about how those other terms are not the same as this one. At the same time, I think it's important to realize that there is a prefatory term here that comes up in 1101A43S, which is the related to language, which actually applies to all three of those. So that's also another area that introduces ambiguity. Other areas that come up, and I can't remember precisely, this is everything that was followed to the T in Esquivel, is whether or not there was case law out there that interpreted. And here, interestingly, and this is discussed by the board, not in the context of ambiguity, but by the board, in its Valenzuela-Garando decision, there were 17 states before 1996 that had the phrase obstruction of justice or some flavor of that in their written statutes. Only three of those at the time actually had some requirement for a pending judicial proceeding. Those three states were Indiana, Wisconsin, and Hawaii. The other 14 states did not. So that's something there that helps you look at why ambiguity exists. The dictionary definition, something else that was consulted by the Esquivel decision, cut in different directions here. You have one dictionary definition, Black's Law Dictionary, circa 1990, that does seem to call for a judicial proceeding. You have the Brian Garner Dictionary, the Modern Language of Legal Usage, I think it's called, which has a much broader definition. There's really just, at each of the points in Esquivel, I think it's fair to say that things tended to have a confluence at a single point, and that's just not true here. Even if you look at Chapter 73, if you look at the Title 18 provisions, one through, I think now it's 21, as was just discussed with opposing counsel, by your honors, they cut in different directions. Even one that existed back in 1996, 18 U.S.C. 1512, has a different track on whether something needs to be foreseeable or not than the other ones. These things cut in different directions. I think that when you take all of this together, there's simply no single definition that you can come up with that was attended in 1996. Another area that came up, this was, again, talked about in a different context by the board in its presidential decision, were the circuit court cases. There's one case in particular, the D.C. Circuit Court's opinion in Barlow, which long preceded 1996, which talked about accessory after the fact as being an obstruction case. The list here is obstruction of justice perjury, and what's the third? I have it right here, your honor. Bribery. Justice perjury, subordination of perjury, and bribery. That's right. Thank you, Judge Lynch. Just so I understand it, is bribery linked to an official proceeding? I have not looked into that, your honors. I don't have a firm answer for you. The other thing that I do want to point out as my time continues to run is… Your time has ended, but you can make this point. Thank you, your honors. Previously, during the discussion with opposing counsel, there was mention of a circuit split. I just want to make clear that it's really not at all clear for the Third Circuit whether their decision was based on ambiguity or if they were simply opting out of Chevron altogether because they thought that this was something that the court could interpret just as well as the agency. And for the Ninth Circuit, they went back and forth. First, they said there was ambiguity. Then they said there wasn't ambiguity. So even there, it's a little bit more of a gray area than you'd normally see. But if this court does decide that Chevron applies and also that ambiguity applies, at that point, you're outside where the Third and the Ninth Circuit acted. They never got to Chevron Step 2. So a decision based on Chevron Step 2 would not conflict with what those circuits did. Unless you have further questions, your honor, thank you for your time. Just a minute, Mr. Schultz. Okay, thank you. If you would mute your devices. Ms. Winger. Thank you. A few points very briefly in my one minute. Absolutely, the Supreme Court's framework in Esquivel-Quintana must govern here at Chevron Step 1. With respect to bribery, I would just point out that the phrase is bribery of a witness, and the board itself in Espinoza-Gonzalez stated that it requires impeding an ongoing proceeding or investigation. The phrase related to that Mr. Schultz referred to does not render the term obstruction of justice ambiguous, as the Ninth Circuit observed. And I would point this court to the Supreme Court's decision in Mullooly where it interpreted offenses relating to controlled substance, and it rejected a broad definition of related to that would permit a categorical match to a state offense that lacked an essential element. In Mullooly, it was a controlled substance. Here, it's a pending proceeding or investigation. Could you just address the reference that the government made to the 17 state statutes which they said only three adopt the interpretation of obstruction of justice that you're asking us to adopt? It is true, as the board noted, that in 1996, of the offenses that used the phrase obstruction of justice, what the board said was that there was no sort of pattern as to precisely how they defined it, and that only three included an element of a pending proceeding. But that does not mean that there were not many offenses in 1996 that did require as an element a pending proceeding or investigation that could categorically match the generic offense here. I would just, as an example, on review of Chapter 268 of the Massachusetts General Laws, there are a number of offenses that arguably require an access to a pending proceeding or investigation, including the version of witness intimidation that was in effect in 1996. So the board found no clear answer from state law, but because federal law overwhelmingly provides a clear answer here, it doesn't render the term unambiguous applying the framework in Esquivel-Quintana. I believe I am at my time. Did you have anything else? No, Your Honor. I would just reiterate that under the clear framework of Esquivel-Quintana, the phrase here is unambiguously requires an access to a pending proceeding or investigation, and for that reason, this court should grant petitioners' petition for review. All right. Thank you, Ms. Winger. Thank you, counsel. Thank you. That concludes the argument in this case. Attorney Winger, Attorney Doyle, and Attorney Schultz, you should disconnect from the hearing at this time.